961 So.2d 1036 (2007)
Byron WRIGHT, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-3241.
District Court of Appeal of Florida, Fourth District.
July 18, 2007.
*1037 Carey Haughwout, Public Defender, and Richard B. Greene, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Claudine M. LaFrance, Assistant Attorney General, West Palm Beach, for appellee.
MAY, J.
The defendant appeals an order denying a motion to withdraw his plea to armed carjacking involving a firearm and resisting without violence. He argues the trial court erred in denying the motion to withdraw his plea prior to sentencing. We agree and reverse.
At age nineteen, the defendant appeared before the trial court to enter a change of plea. During the plea colloquy, the trial court informed the defendant of the charges against him and the possible sentences. The defendant told the court he understood his rights, the charges, and the possible sentences that could be imposed. The defendant also moved for a downward departure sentence as a youthful offender.
At the end of the plea colloquy, the defendant asked to speak with his attorney. After conferring with him, the defendant indicated that he wished to proceed without any questions. On both counts, the defendant entered a plea of no contest. The trial court accepted the plea finding the defendant had entered the plea knowingly, intelligently, and voluntarily.
The court set the sentencing hearing for approximately one month later. The defendant also spoke on his own behalf. When the court inquired why he had committed the crime, the defendant responded: "Your Honor, to tell you the truth, I didn't carjack this lady. I was just at the wrong place at the wrong time."
The following discussion then took place.
THE COURT: Can you tell me what that means? You weren't there at all or you were there?
MR. WRIGHT: I just feel this is in my best interest.
THE COURT: I'm not understanding exactly what you're saying. It says on April 3rd, 2005, it says a black male, early 20s, about 6 foot 1 approached this *1038 victim, pointed a silver colored handgun at her rib cage, and said get out of the car, I don't want to shoot you, get out of the car. The victim said she was in fear of her life. Then the subject took the keys and he and another black male got into the victim's vehicle and fled the scene. So were you one of these two men?
MR. WRIGHT: No, Your Honor.
THE COURT: You were not?
MR. WRIGHT: I was not at the scene, Your Honor. I was there.
THE COURT: How many people were there?
MR. WRIGHT: They say it was three black males, Your Honor. I was in the stolen car. I was the passenger in that vehicle.
THE COURT: When the car got stopped, this Monte Carlo?
MR. WRIGHT: Yes, sir.
THE COURT: You're saying you weren't there when the car was taken?
MR. WRIGHT: No, sir.
THE COURT: Okay. Nonetheless, it was your decision to enter a plea to this charge.
MR. WRIGHT: Yes, sir.
THE COURT: Knowing that the maximum sentence is life.
MR. KADER [State's Attorney]: Life.
THE COURT: It's life imprisonment.
MR. WRIGHT: I understand that, sir.
THE COURT: You chose to enter a plea to a crime that you did not commit?
MR. WRIGHT: Yes, sir.
THE COURT: Why would you do that?
MR. WRIGHT: I feel it's in my best interest.
Defense counsel explained that the defendant's mother could verify that he was at home with her that day. He went over to a friend's house, which is where the stolen car was located. The two men got into the car and that is when they were stopped by the police.
Defense counsel explained that the defendant was afraid of losing at trial. If he lost at trial, the defendant was concerned the trial court would not consider a downward departure sentence as a youthful offender.
The State explained that the victim reported two masked men and a third unmasked individual were involved in the carjacking. The defendant was allegedly the unmasked individual. At this point, defense counsel asked to confer with the defendant.
After conferring with the defendant, defense counsel informed the court that his client was scared. When the trial court asked the defendant if he was satisfied with his counsel's advice and investigation, he responded affirmatively. The defendant acknowledged that he entered a plea of no contest in a case where he claimed he was not present. He understood that fact when he entered his plea and gave up his right to a trial.
When the defendant informed the court that he entered his plea because he was afraid of being railroaded, the trial court explained:
Railroad has kind of a funny connotation when you talk to a judge about that. Basically, that means to me that you're going to be, number one, sentenced for something you didn't do, and number two, the Court is not going to give consideration to everything that you present. I want to assure you that you entered your plea, so I'm assuming you did this. That's why I asked you these questions about your involvement and why you did it. And since you've entered your plea, I have to believe that you did it. That's one of the things I'm *1039 going to consider when I impose sentence is that you committed this crime. If you didn't commit the crime, then we're in the wrong place doing the wrong thing here. I want you to know I would consider everything else that's been presented on your behalf, including what you said and what your mother said in determining an appropriate sentence. But sentence is only imposed when somebody enters a plea and acknowledges their guilt or enters a plea in their best interest which I think is what you've done. I guess what I'm asking, sir, is it still your decision to have the Court impoise [sic] sentence as opposed to going to trial?
The defendant responded: "I understand, sir. I'm just kind of confused. I'm just nervous, sir." The defendant informed the court that he was so confused that he was about to "black out."
The State requested that the victim be permitted to testify and that sentencing occur immediately rather than delay it any longer. The victim identified the defendant as the man who pointed the gun at her during the carjacking. She said she could identify him because he was not wearing a mask. She had identified him several times before.
After the victim's testimony, the defendant informed the court that he was confused about what to do, and asked to speak with his mother. The court told him, "We've already gone through this." The defendant indicated that he "just wanted a chance." At this point, defense counsel informed the court that she was uncomfortable with the dialogue and did not know whether the defendant wanted to proceed. She told the defendant that she did not know if the court would allow him to withdraw his plea, but if he wanted to, now was the time to do it. She told the defendant that she was concerned about him being confused and the way he was acting.
The trial court observed the defendant to be physically fine and responding to questions appropriately. The State objected to a youthful offender sentence and requested "at least 20 years with a ten year minimum mandatory." The defendant then personally told the court he wanted to withdraw his plea. The trial court asked for grounds, and defense counsel stated:
Grounds being, Your Honor, that I think Mr. Wright has reconsidered and is indicating that he did not commit the carjacking. His mom and family are defense witnesses that I had previously listed that indicate that at the time that this was being done he was not there. He admits to being in that car. And that is why he originally indicated he had entered the plea. I think he just  I don't know. I think he just realized that perhaps he wants to go to trial instead of take the wrap for this.
We've had discussions about it regarding the possible penalties and the fact that there is a defense. I have indicated there is a possibility of the youthful offender. I have not promised him that anything could occur. I have told him that this could happen. He has just indicated that he wants to withdraw his plea and has reconsidered that he should go to trial.
The trial court denied the defendant's ore tenus motion to withdraw his plea. According to the court, nothing had established that the plea was not freely and voluntarily given or that any new information was exposed during the sentencing hearing that was previously unknown or unavailable. The trial court then denied the defendant's motion for a downward departure sentence as a youthful offender, adjudicated him guilty of carjacking with a *1040 firearm and resisting without violence, and sentenced him to twenty years with a ten-year mandatory minimum for the carjacking count and to time served, 459 days, on the resisting without violence count.
The next day, the defendant moved in writing to withdraw his plea and set aside the sentence. He claimed his plea was involuntary because he was confused and was "about to black out." The defendant filed a second motion to withdraw his plea twenty days later and also moved to mitigate his sentence. The trial court denied both motions.
We review a trial court's denial of a motion to withdraw a plea under an abuse of discretion standard. Woodly v. State, 937 So.2d 193, 196 (Fla. 4th DCA 2006) (citing Boule v. State, 884 So.2d 1023, 1024 (Fla. 2d DCA 2004)). The defendant argues that his plea was entered under a misapprehension and therefore involuntarily. The State responds that the trial court properly found the plea was knowingly, intelligently, and voluntarily entered.
"[R]ule 3.170(f) provides that `[t]he court may, in its discretion, and shall upon good cause, at any time before a sentence, permit a plea of guilty to be withdrawn.'" Tanzi v. State, ___ So.2d ___, ___, 32 Fla. L. Weekly S223, S224, 2007 WL 1362862 (Fla. May 10, 2007) (quoting Fla. R.Crim. P. 3.170(f)) (emphasis added). Our supreme court has noted that "this presentence standard is favorable to defendants, and trial courts are encouraged to liberally grant motions made before sentencing." Id. (citing State v. Partlow, 840 So.2d 1040, 1044-45 (Fla.2003) (Cantero, J., concurring)).
The defendant bears the burden to establish "good cause." Adler v. State, 382 So.2d 1298 (Fla. 3d DCA 1980). However, when good cause is established, the rule entitles the defendant to withdraw the plea. Tanzi, ___ So.2d at ___, 32 Fla. L. Weekly at S224. And, the "rule should be liberally construed in favor of the defendant." Id. (quoting Robinson v. State, 761 So.2d 269, 274 (Fla.1999)). "A defendant should be permitted to withdraw a plea `if he files a proper motion and proves that the plea was entered under mental weakness, mistake, surprise, misapprehension, fear, promise, or other circumstances affecting his rights.'" Id. (quoting Robinson, 761 So.2d at 274).
Here, the defendant advised the court of his innocence, the existence of defense witnesses, and his motivation for accepting the plea to improve his chance of being sentenced as a youthful offender. He advised the court that his witnesses would testify that he was elsewhere during the commission of the crime and explained his presence in the car at the time of arrest.
The record reflects the defendant's emotional demeanor, fear, and indecision concerning the plea he had entered a month before. The defendant had undergone a psychological evaluation and assessment for the Boot Camp program in preparation for requesting the downward departure. In short, he presented good cause to withdraw his plea prior to sentencing.[1]
We emphasize the timing of the defendant's request. This was not a request made after the defendant had learned of the trial court's sentence and was simply displeased with the outcome. This is a request made before the trial court had considered the defendant's request for a departure sentence and imposition of a *1041 youthful offender sentence. In fact, the trial court recognized the defendant's fear and apprehension during the discussion of his motion to withdraw the plea. Under these unique circumstances, we find the trial court abused its discretion in denying the defendant's motion to withdraw his plea. The conviction and sentence are reversed and the case is remanded to the trial court to vacate the plea and to be set for trial.
Reversed and Remanded.
SHAHOOD, C.J., and GROSS, J., concur.
NOTES
[1] Admittedly, the victim clearly identified the defendant, but that simply created the factual issue to be decided by the jury.